WILSON WATER & ELECTRIC COMPANY v. ARKADELPHIA.

Opinion delivered June 20, 1910.

1. MUNICIPAL CORPORATIONS—REGULATION OF WATER COMPANY—METERS.—Under Kirby's Digest, § 5442, 5445-7, which give municipal corporations the power to provide a supply of water and to regulate same, to fix reasonable charges for water, and to require the water company to adopt such rates, an ordinance of a city of the second class, providing that if the water company should become dissatisfied with its flat rate it could, after installing a meter at its expense, require the consumer to pay at meter rates, is valid. (Page 611.)

2. SAME—WATER COMPANY—RIGHT TO CHARGE FOR METER.—Where there is nothing in the charter of a water company authorizing it, when it on its own motion puts in meters, to charge the cost of same to the consumer, it cannot charge such cost to the consumer under an ordinance which permits it, if dissatisfied with the flat rate, to install meters *at its own expense.* (Page 613.)

3. SAME—WATER COMPANY—COST OF METER.—Acts 1905, p. 700, providing that water companies in cities of the first and second class, if they furnish meters (and in cities of the first class such meters shall be furnished upon demand without extra charge) shall furnish tables showing the price charged for water, etc., does not prohibit a city of the second class from requiring a water company to furnish meters to its patrons at its expense. (Page 614.)

Appeal from Clark Chancery Court; *James D. Shaver,* Chancellor; affirmed.

Suit for an injunction by the city of Arkadelphia and others against the Wilson Water & Electric Company.

STATEMENT BY THE COURT.

The appellees alleged in their complaint the following: "That appellant, the Wilson Water & Electric Company, was a domestic corporation, holding a charter from the city for supplying it and its inhabitants with water for all purposes; that plaintiffs have been for many years consumers of water furnished by the water company; that they have incurred large expense in putting in pipe lines and fixtures for conducting water from the mains of the water company to their premises, relying on the water company to furnish them water on a flat rate as fixed by the water company, or as might be fixed by the city; that many of the inhabitants of the city, including plaintiffs, have filled up their wells, relying upon the water company for their water supply, and many have done away with surface privies and

have equipped their premises with underground sewers, connected with the water company's water system, upon the contract with the water company that it would furnish water for flushing said sewers, etc.; that plaintiffs have regularly paid for all water furnished, and are ready to continue to pay for said water on a flat rate basis; but the water company, in disregard of its duties and obligations, threatens to cut off the water supply of the city and its inhabitants and these plaintiffs, to their irreparable loss and damage; that it has already cut off the water supply of some of the plaintiffs, and now has its employees going over the premises of plaintiffs, and other customers, cutting off their water supply; that many of the plaintiffs have no other means for obtaining water for any purpose; that plaintiffs have no other adequate remedy.

The prayer of the complaint was that the water company be restrained from cutting off the said water supply, and that it be required to turn on the water supply to those whose water has been cut off, etc.

The answer is as follows: It denies that, in disregard of its duties, and obligations under its franchise, it threatens or has threatened, to cut off the water supply of the city, etc., and of the plaintiffs herein.

It states that the defendant heretofore adopted rules and regulations governing the use of water by its patrons, etc., which rules were printed and distributed among its patrons, etc.; that in the said printed rules and regulations, under the head "Meter Rate for Water," the following rule appears: "Meters will be put in whenever deemed proper by the company." Section thirteen of defendant's franchise is as follows: "The maximum rate to be charged by the grantee for water shall be as follows: When the quantity used averages from one hundred to one thousand gallons per day, thirty cents per thousand gallons; when the quantity used averages over one thousand gallons, twenty-five cents per thousand gallons. Flat rates shall be based upon the above consumption; provided, however, that in no case shall the rate for private residence occupied by one family, one connection without hose bib, water for domestic purposes only, exceed $2.25 per quarter; and provided further that if the flat rate in any case should exceed the rate established by the water company, as evidenced by its book of rules, * * * the con-

sumer may demand metered service according to the rules and regulations of the grantee, but in no case shall measured water be furnished at a less rate than $2.25 per quarter for each taker so furnished."

The city council of the city on the 1st of March, 1909, passed and published the following ordinance, towit:

"Section 1. That the maximum rate to be charged by the water company, its successors and assigns, for measured water shall be as follows: When the quantity used averages from one gallon to one thousand gallons per day, thirty cents per thousand gallons; when the quantity used averages over one thousand gallons per day, twenty-five cents per thousand gallons; but in no case shall measured water be furnished at a less rate than seventy-five cents per month. Flat rates shall be based upon the above consumption, provided however that in no case shall the flat rate for private residence, occupied by one family, one connection without hose bib, water for domestic purposes only, exceed seventy-five cents per month; and provided further that, if any consumer or taker shall be or become dissatisfied with the flat rates at which water is being supplied him, he may, after installing and connecting a meter of some standard make, on his premises, demand measured water, or metered service, according to the prices hereinabove fixed for measured water; and provided further that, in case the water company shall become dissatisfied with the flat rate paid for water by any consumer, it may require the said consumer to install a meter of some standard make and charge for measured water the prices above fixed. In event said meter so installed gets out of repair, or fails to register, the consumer shall be charged at the average daily consumption as shown by the meter when in order, until same can be repaired or replaced. The minimum rate for measured water will be seventy-five cents per month.

"Sec. 2. And the water company, its successors and assigns, are hereby required to accept and adopt the above rates."

In pursuance of this ordinance, the defendant, about the 1st of September, 1909, gave notice by publication that all customers and consumers of water furnished by defendant would be required to furnish, pay for and install water meters, to measure the water used by them, on or after the 1st day of November, 1909.

Defendant, in order to facilitate the enforcement of its rules and the above ordinance, divided its consumers into classes as follows, towit: Class A. All parties who own their residence property and pay more than seventy-five cents per month for water. Class B. All persons who rent residence property and pay more than seventy-five cents per month for water. Class C. All business houses and firms who pay more than seventy-five cents per month for water. Class D. All other consumers of water.

All the plaintiffs, except the city, belong to class A customers.

In addition to the printed notice above referred to, the defendant gave to each of the plaintiffs, except the city, written notice, notifying them, that they would be required to pay for and install at their expense, meters on their respective premises on or before the 1st day of November, 1909, which notice was sent to them by United States mail, properly addressed to each of them, more than thirty days before the 1st of November, 1909.

Plaintiffs failed to put in said meters, not because they were not given sufficient time to do so, but because they were disposed to question the right of defendant to require them to install meters at their own expense; and defendant proceeded to cut off their water supply because they failed to comply with the reasonable rules and regulations of the defendant, as above stated. Defendant states that it was compelled, for its own protection, to require said meters to be installed, as it had discovered that large quantities of water had been wasted, and were being wasted, without any regard to the rights of the company; that it was costing defendant a large sum of money for fuel and other purposes to furnish water for its customers. That without the installation of meters the defendant had no means of stopping the needless waste of water by its customers.

The decree recites: "That the court, having heard the testimony and being advised, finds: That the city is a municipal corporation of the second class; that all other plaintiffs are citizens of said city, and are patrons of defendant water company; that on the 15th of August, 1904, the city granted to the water company a charter authorizing it for a term of thirty years to supply water to the said city and its inhabitants, upon the terms and conditions there named. That section thirteen of said charter is as follows: 'The maximum rate to be charged by the grantee

for water shall be as follows: When the quantity used averages one hundred to one thousand gallons per day, thirty cents per thousand gallons; when the quantity used averages over one thousand gallons per day, twenty-five cents per thousand gallons. Flat rates shall be based upon the above consumption; provided however, that in no case shall the rate for private residence, occupied by one family, one connection without hose bib, water for domestic purposes only, exceed $2.25 per quarter; and provided further that if the flat rate in any case should exceed the rate established by the water company as evidenced by its book of rules * * * adopted in 1897, * * * the consumer may demand metered service according to rules and regulations of the grantee; but in no case shall measured water be furnished at a less rate than $2.25 per quarter for each taker so furnished.'

"That the printed rules and regulations * * * referred to in section thirteen, copied as above, were filed and copied with the said charter. That on the ...... day of October, 1909, * * * the water company published in *The Siftings-Herald,* a newspaper regularly published in said city, the following notice to the patrons of the water company to require them to install water meters at their own expense towit: 'All water users are hereby notified that they will be required to put in water meters on or before the 1st day of November, 1909, according to the rules of the company. The consumer to pay for the meter and to pay for keeping same in repair. All who desire to continue the service on a flat rate may do so by paying double the price paid now. The city will be the only exception to this rule. This action on the part of the company is made necessary by the condition that the receipts will not pay expenses and a reasonable return on the investment, due largely to the wanton waste of water, which we have been unable to control. The approximate cost of installing a meter of any standard make, complete with meter box for residence use, will be about $16.50.'

"On the 6th of September, 1909, the city passed and published an ordinance, as follows:

" 'AN ORDINANCE.

" 'Be it ordained by the City Council of the city of Arkadelphia, Arkansas.

" 'Section 1. That section one of an ordinance entitled, 'An ordinance to fix and regulate the price and rates to be

charged for furnishing water * * * in the city by the water company,' * * * which was passed March 1, 1909, be amended so as to read as follows:

"'Section 1. The maximum rate to be charged by the water company, * * * for measured water shall be as follows: When the quantity used averages from one gallon to one thousand gallons per day, thirty cents per thousand gallons; when the quantity used averages above one thousand gallons per day, twenty cents per thousand gallons; but in no case shall measured water be furnished at a less rate than seventy-five cents per month, for each taker so furnished. Flat rates shall be based upon the above consumption, provided, however, that in no case shall the flat rate for private residence occupied by one family, one connection, without hose bib, water for domestic purposes only, exceed seventy-five cents per month. And provided that if any customer shall become dissatisfied with the flat rate at which water is being supplied him, he may, after installing a meter of some standard make on his premises, demand measured water, meter service, according to the prices as hereinabove fixed for measured water. And provided further, that, in case the water company shall become dissatisfied with the flat rate paid for water by any customer, it (the water company) may, after installing and connecting a meter of some standard make, at its (the water company's) expense, on the consumer's premises, require the consumer to pay for measured water at the rates above fixed for measured water. * * *

"The plaintiffs, other than the city, prior to the 1st of November, 1909, received and had notice that the water company would require its patrons to install meters on their respective premises, at their own expense, and, failing to do so, their water supply would be cut off. That said plaintiffs refused to comply with that rule, or request, because of their contention that the water company should install the said meters at its own expense. That on the 1st of November, 1909, the water company proceeded to cut off the water supply of plaintiffs because of their refusal to install meters at their expense.

"The court finds that the said ordinance is valid, and that the above cited rule adopted by the water company, requiring its patrons to put in meters at the consumer's expense, is in conflict with said ordinance, and is therefore unreasonable and

void; that the water company has the right, if desired, to install meters at its expense."

Upon these findings the court rendered the following decree:

"That the relief prayed in plaintiff's complaint is hereby granted, and the defendant, etc., do absolutely desist and refrain from shutting off the water supply, obstructing or interfering with the water supply of plaintiffs. And the defendant is hereby required to continue to supply water to plaintiffs upon the terms and at the rates provided by said ordinance of the said city upon the payment to the defendant of the rates fixed by the said ordinance, or upon tender to the defendant of the said amount, or in the event the defendant shall at its own expense furnish a meter, to the service pipes of the plaintiffs or any of them, and supply measured water, then the defendant is required to continue to furnish and supply said plaintiffs water at the meter rate, as fixed by said ordinance, upon payment by plaintiffs of the amounts authorized to be collected."

The appellant has duly prosecuted this appeal.

*Hardage & Wilson* and *John H. Crawford,* for appellants.

The court should have specified some amount in which bond should be given before the injunction order was made. Kirby's Dig. § 3975; 108 La. 204; 61 L. R. A. 781. In the absence of a bond the order is void. 42 Kan. 739; 22 Pac. 735; 45 Kan. 523; 24 Pac. 960; 82 Cal. 167; 22 Pac. 1086; 75 Tex. 180; 12 S. W. 180; Kirby's Dig. § § 3975, 3977, 3979, 3981; 114 N. C. 474; 19 S. E. 367; Const. § 20, art. 7; 12 Ark. 657; 87 Ark. 45. The water company may require the consumer to provide a meter at his own expense. 199 Mass. 118; 18 L. R. A. (N. S.) 746; 116 Wis. 606; 61 L. R. A. 33; 25 Ch. Div. 443.

*McMillan & McMillan,* for appellee.

The expense of the meter cannot be imposed on the consumer. 45 N. J. L. 246. The company cannot make arbitrary charges with the penalty of forfeiture of the right to use the water. 2 Stew. Eq. 77; 1 Allen 361; 104 Mass. 95; 2 Dutcher 298. The ordinance was valid. 34 Ark. 603; 70 Ark. 221. The injunction order was properly issued. 104 Ala. 315; 16 So. 123; 49 Neb. 579; 68 N. W. 945. The meter is for the benefit of the company. 82 Cal. 286; 6 L. R. A. 756; 52 Mo. App. 312.

WOOD, J., (after stating the facts). The decree was correct. Sections 5442, 5445, 5446 and 5447 of Kirby's Digest, inclusive, give to municipal corporations the power to provide "a supply of water" and "to regulate same," and authorize the city council "to determine whether the prices charged for water are reasonable," and "to fix such prices to be paid for water as they may deem to be a reasonable charge," and require the water company "to adopt such rates to be charged for water as shall be fixed by the city council." Under these provisions of our statute the ordinance of the city council of Arkadelphia, passed September 6, 1909, was valid. That was an ordinance "to fix and regulate the price and rates to be charged for furnishing water in the city by the water company." The provision permitting the water company, in case it became dissatisfied with the flat rate, to install a meter at its expense and to require the consumer to pay at the rates fixed for measured water was but a means of regulating the distribution and "supply of water" and of fixing the price that should be paid for same. In *Red Star Steamship Company* v. *Jersey City*, 45 N. J. Law (16 Vroom) 246, it is said:

"A meter is a contrivance to regulate the distribution of water by adjusting the quantity and price. It is therefore within the province of the city board's duties to enable them to fix their rates with exactness, instead of by uncertain estimate, and to deal justly with the consumers. The idea advanced on the argument in behalf of the city was that the meter was for the advantage of the consumers, to protect themselves against the overcharge of the commissioners, and from excessive estimates of the quantity of water used. The only duty of the consumer spoken of in the charter is the payment of rent for the use of the water, and there is nowhere an intimation that the city may, without his consent, supply fixtures for the distribution or use of water and charge him with the cost. Section 87 of the act of 1871, under which the right to make this charge is claimed, enables the board of public works to make by-laws, rules and regulations for the security and proper management of the waterworks and drainage, for the introduction of water into the houses and to regulate the use thereof, as may seem to them necessary and proper; but it is not said that by such by-laws, rules and regulations they may, on their own motion, procure

expensive devices for regulating the supply of water and impose the cost on the consumer."

There is nothing in appellant's charter authorizing it, when it puts in meters, to charge the consumer for the cost of such meter. There is a provision in the charter that, if the flat rate should exceed the rate established by the company's rules, "the consumer may demand metered service according to the rules and regulations of the grantee" (water company). But this provision of the charter is for the benefit of the consumer, and is only to be invoked by him. The charter refers to the "rules and regulations of the grantee." But there is nothing in these "rules and regulations" that gives the water company the right to charge the consumer with the cost of meters. The rule that "meters will be put in whenever deemed proper by the company" does not authorize the appellant to charge the consumer with the cost of the meter when it is "put in." The ordinance of the city council of March, 1909, § 1, provided * * * "that, in case the water company shall become dissatisfied with the flat rate paid for water by any consumer, it may require the said consumer to install a meter of some standard make," etc. This probably did authorize the company to have the consumer install a meter at his own expense. But this section of the ordinance was expressly amended by the ordinance of September 6, 1909, allowing the water company, if it became dissatisfied with the flat rate paid for water by any customer, to install a meter *at its own expense.* So in the case under consideration there is a valid ordinance passed by the city council under authority of statutory provisions permitting the appellant, on becoming dissatisfied with the flat rate paid by the consumers of water, to install and connect a meter *at its own expense,* and to require the consumer thereafter to pay "for measured water." The appellant is therefore not warranted in demanding that the consumers of water shall put in meters at their own expense. The case before us does not call for a discussion of what is, or should be, the rule in cases where the city council, having the authority to do so, has passed an ordinance requiring the consumers of water generally, or a certain class of consumers, to pay for installing meters. Such are the cases of *Shaw Stocking Co.* v. *Lowell,* 18 L. R. A. (N. S.) 746; *State* v. *Gosnell,* 61 L. R. A. 33. These cases, however, are authority for the position that where a city council

is authorized to pass an ordinance requiring the consumer to furnish meters, and the council makes such a regulation, it will be enforced. The same rule is necessarily applicable where the city council is authorized, as in the case at bar, to pass and does pass an ordinance permitting the water company, where it is dissatisfied with the flat rate, to put in meters at its own expense. The ordinance in the latter case will be enforced upon the same principle as the former. Nor is the case at bar one in which the city council, although having authority, has not passed any ordinance upon the subject. Here the city council, having authority, has spoken, and has said that the appellant, if it becomes dissatisfied with the flat rate being paid by its consumers, may put in meters at its own expense. This necessarily excludes the idea that appellant may put in meters at the expense of appellees.

In addition to the authorities above cited, see in note to *State* v. *Gosnell, supra,* 61 L. R. A. at page 112, "Meters."

Act 282, Acts of 1905, p. 700, provides: "That all persons, partnerships or corporations, owning or operating any company or enterprise for the furnishing of water * * * to the general public, in cities of the first and second class, * * * in case they furnish meters to their patrons for the purpose of measuring such water * * * (and in cities of the first class such meters shall be furnished upon demand without charge), are hereby required to supply printed tables to their patrons semi-annually, on the 1st day of January and July of each year, which said tables shall show the price charged per thousand units for such water."

There is nothing in the above statute prohibiting city councils in cities of the second class from passing an ordinance requiring water companies to furnish meters to their patrons at the expense of the companies, nor is there anything in the statute prohibiting cities of the second class from passing an ordinance requiring the patrons of water companies who demanded meters to pay for same. The law in this respect as to cities of the second class has not been changed by the passage of the above act. The council has precisely the same power in these cities with reference to "meters" as it had before.

Having reached the conclusion that the judgment of the chancery court granting the injunction is correct, the questions incident to the regularity of the proceeding for temporary restraining order necessarily pass out. The decree is affirmed.